GARCIA RAINEY BLANK & BOWERBANK LLP
A LIMITED LIABILITY PARTNERSHIP
NORMA V. GARCIA, Cal. Bar No. 223512
ngarciaguillen@garciarainey.com
JEFFREY M. BLANK, Cal. Bar No. 217522
jblank@garciarainey.com
HUGO A. LOPEZ, Cal. Bar No. 315846
hlopez@garciarainey.com
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
Telephone:    (714) 382-7000
Facsimile:    (714) 784-0031

Attorneys for Plaintiffs
Clifford A. Rosen, MD and Ronald A. Christensen, MD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD A. ROSEN, an individual; RONALD A. CHRISTENSEN, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>URBAN COMMONS, LLC, a Delaware Limited Liability Company; URBAN COMMONS 6TH AVE SEATTLE, LLC, a Delaware Limited Liability Company; URBAN COMMONS BATTERY PARK, LLC, a Delaware Limited Liability Company; CHICAGO ANALYTIC TRADING COMPANY, LLC, d/b/a LITTLERIVER CAPITAL, LLC, a Delaware Limited Liability Company; DIGITAL CAPITAL MARKETS, LLC, a Maryland Limited Liability Company; TAYLOR WOODS, an individual; HOWARD WU, an individual; C. BRIAN EGNATZ, an individual; and DOES 1 through 10, inclusive<br><br>Defendants | **Case No.:** 8:20-cv-01973-JLS-DFM<br><br>**PLAINTIFFS CLIFFORD A. ROSEN AND RONALD A. CHRISTENSEN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER, ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT, AND REQUEST FOR AN ORDER PERMITTING EXPEDITED DISCOVERY**<br><br>Date:        May 14, 2021<br>Courtroom:    6B, 6th Floor<br>Judge:        Hon. Douglas F. McCormick |

i

# TABLE OF CONTENTS

Page No.

I.   **INTRODUCTION**…………………………………………………1

II.  **STATEMENT OF FACTS**………………………………………..4

   A. **The Urban Commons Enterprise**…………………………………4

   B. **Plaintiffs' Investments In UC Seattle And UC Battery Park**………………4

      1. **UC Seattle**…………………………………………………4

      2. **UC Battery**…………………………………………………7

III. **LEGAL STANDARD**……………………………………………6

IV.  **LEGAL ARGUMENTS**……………………………………………7

   A. **The Court Should Issue A Writ of Attachment**…………………………7

      1. **Plaintiffs' Claim Is One Upon Which An Attachment May Issue**……..7

      2. **Plaintiffs' Claim Is For A Fixed Or Readily Ascertainable Sum Over $500**……………………………………………………8

      3. **Plaintiffs' Claim Against Woods and Wu Arises Out Of Their Conduct Of a Trade, Business Or Profession**………………………………8

      4. **Plaintiffs' Claim Is Not Secured By Real Property**……………………10

   B. **Plaintiffs Have Established The Probable Validity Of Its Recession Claim**……………………………………………………..10

      1. **Defendants Offered And Sold Plaintiffs A Security**……………………10

      2. **The Securities Defendants Sold Plaintiffs Were Without Qualification Or Exemption**……………………………………………..12

   C. **The Attachment Is Sought Only To Recover On Plaintiffs' Claim**……….12

   D. **The Amount Sought IS Greater Than Zero**………………………………12

   E. **Plaintiffs' Description of the Attachable Property Is Reasonably Adequate**……………………………………………………13

- ii -

**F.** **Plaintiffs' Request For Expedited Discovery Is Necessary To Determine The Disposition And Location Of Defendants' Assets And To Trace Defendants' Ill-Gotten Gains**……………………………..………………14

**V.** **CONCLUSION**……………………………………………………………..15

PLAINTIFFS' APPLICATION FOR WRIT OF ATTACHMENT

# TABLE OF AUTHORITIES

**Page No(s).**

**CASES**

*Advance Transformer Co. v. Superior Court*
    44 Cal. App.3d 127 (1974)……………………………………………………..9

*Bank of America v. Salinas Nissan, Inc.*
    207 Cal. App. 3d 260 (1989)……………………………………………………...13

*Bennett v. Superior Court in and for Los Angeles County*
    218 Cal. 153 (1933)……………………………………………………...……7

*Douglas v. Smith*
    No. SACV 09-1365-DOCMLGX,
    2010 WL 1734903 (C.D. Cal. Apr. 28, 2010)…………………………….....8, 14

*Everflow Tech. Corp. v. Millennium Elect., Inc.,*
    Civ. A. No. 07-5795,
    2009 WL 2581273 (N.D. Cal. Aug. 19, 2009)………………………………..6, 7

*Fremont Bank v. Signorelli,*
    No. 18-CV-04808-HSG,
    2018 WL 6609565 (N.D. Cal. Dec. 17, 2018)…………………………………13

*Gen. Elec. Capital Corp. v. Rhino Bus. Sys., Inc.,*
    No. 216CV00029KJMCMK,
    2016 WL 2743557 (E.D. Cal. May 11, 2016)………………………………...7

*Goldstein v. Barak Const.*
    164 Cal. App. 4th 845 (2008)…………………………………………………...6

*Hamilton Beach Brands, Inc. v. Metric and Inch Tools, Inc.,*
    614 F. Supp. 2d 1056, 1061 (C.D. Cal. 2009)………………………………..6, 7

*Hyosung (Am.) Inc v. Tranax Techs. Inc*
    No. C 10-0793 VRW,
    2010 WL 11587065 (N.D. Cal. Mar. 31, 2010)………………………………..14

*Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson,*
    197 Cal.App.3d 1 (1987)..…………………………………………………....8

*Maaco Franchising, LLC v. 5296, LLC*
    No. EDCV162218GWSPX,
    2017 WL 10543655,  (C.D. Cal. Apr. 24, 2017)……………………………………14

*Nakasone v. Randall*
    129 Cal.App.3d 757 (1982)……………………………………..……….....9

*Oil Lease Service, Inc. v. Stephenson*
    162 Cal.App.2d 100 (1958)…………………………………………………11

*People v. Coster*
    151 Cal. App. 3d 1188 (Ct. App. 1984)…………………………………...11

*People v. Park*
    87 Cal.App.3d 550 (1978)…………………………………..………………11

*People v. Skelton*
    109 Cal.App.3d 691 (1980)…………………………………………………11

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*,
    112 F. Supp. 2d 1178 (C.D. Cal.2000)……………………………………….7

*Rose v. Abraham*
    No. 1:08CV00606-AWI-SMS,
    2008 WL 3540542 (E.D. Cal. Aug. 13, 2008)………………….…………...14

*Sarmento v. Arbax Packing Co.*
    231 Cal.App.2d 421 (1964)…………………………………………………12

*Securities & Exch. Com'n v. Glenn W. Turner Enter., Inc.*
    348 F.Supp. 766 (D.Or.1972)………………………………………………..10

*Securities & Exch. Com. v. Howey Co.*
    328 U.S. 293 (1946)………………………………………...…………………..11

*Silver Hills Country Club v. Sobieski*
    55 Cal.2d 811 (1961)…………………………………………………………..12

*Trachsel v. Buchholz*,
    No. C-08-2248 RMW,
    2009 WL 839117 (N.D. Cal. Mar. 30, 2009)……………...................2, 7, 8, 10, 12

PLAINTIFFS' APPLICATION FOR WRIT OF ATTACHMENT

**CODES AND STATUTES**

**Rules**

Fed. R. Civ. P. Rule 30(b)(1)…………………………………………………….3

Fed. R. Civ. P. Rule 33(b)(2)…………………………………………………….3

Fed. R. Civ. P. Rule 34(b)(2)(A)………………………………………………...3

Fed. R. Civ. P. Rule 64…………………………………………………….2, 5

**California Code of Civil Procedure**

Cal. Code Civ. Proc. § 481.010…………………………………………………6

Cal. Code Civ. Proc. § 483.010(a)………………………………………………6

Cal. Code Civ. Proc. § 483.010(b)……………………………………………6, 9

Cal. Code Civ. Proc. § 481.090………………………………………………..10

Cal. Code Civ. Proc. § 483.010(c)……………………………………………2, 8

Cal. Code Civ. Proc. § 484.020………………………………………………2, 3, 7

Cal. Code Civ. Proc. § 484.090……………………………………………………2

Cal. Code Civ. Proc. §§ 484.090(a)…………………………………………6, 7

Cal. Code Civ. Proc. §§ 484.090(a)(3)…………………………...……………………..3

Cal. Code Civ. Proc. § 484.090(a)(4)………………………………………3, 12

**California Corporations Code**

Cal. Corp. Code § 25019…………………………………………………………11

Cal. Corp. Code § 25110……………………………………………...2, 3, 10, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In predatory fashion, Defendants Urban Commons, Tyler Woods, and Howard Wu, induced Plaintiffs, Clifford A. Rosen and Ronald A. Christensen into investing their hard-earned money into "can't miss" opportunities, and aggressively attempted to and ultimately succeeded in convincing Plaintiffs to purchase a membership interest in single purpose limited liability companies formed by Defendants. In turn, Defendants represented to Plaintiffs that by and through these single purpose LLC's, Defendants would purchase and indirectly own one hundred percent of the hotel properties Hilton Seattle and The Wagner Hotel. Based on this fraudulent securities scheme, Plaintiffs each invested $250,000 in Urban Commons 6th Ave Seattle, LLC ("UC Seattle"), which Defendants represented to Plaintiffs was the single purpose LLC that would be used to purchase the Hilton Seattle. In addition, Dr. Christensen invested an additional $250,000 in Urban Commons Battery Park, LLC ("UC Battery Park"), which Defendants represented to Dr. Christensen was the single purpose LLC that would be used to purchase the Wagner Hotel (formerly known as the Ritz-Carlton Battery Park).

Now, having fallen prey to Defendants' deceptive securities scheme, Plaintiffs Clifford A. Rosen ("Dr. Rosen") and Ronald A. Christensen ("Dr. Christensen, collectively "Plaintiffs"), by and through this Application, seek a Right to Attach Order ("RTAO") and Order for Issuance of Writ of Attachment ("Writ") based on their claim for rescission. Specifically, Plaintiffs' rescission claim is based on violations of Section 25110 of the California Corporations Code, which makes it unlawful to offer or sell an unqualified security in the state unless the security is exempt. (Cal. Corp. Code § 25110.) Based on Defendants' unlawful offering and selling of unregistered, unqualified and non-exempt securities in California, Plaintiffs, under Section 25503 of the California Corporations Code, seek a rescission of their purchase of membership interests in UC Seattle and UC Battery Park and restitution of their amount invested, which collectively totals $750,000. (Declaration of Clifford A. Rosen ("Rosen Decl.") ¶¶ 3-4 ; *see also*

Declaration of Ronald A. Christensen ("Christensen Decl.") ¶¶ 3-4.)

**Right to Attach Order And Writ of Attachment.** The evidence supporting Plaintiffs' Application satisfies the requirements of Sections 484.020 and 484.090 of the California Code of Civil Procedure which pursuant to Federal Rules of Civil Procedure 64, the Court may use to determine the prejudgment remedies being sought by Plaintiffs. (*See* Fed. R. Civ. P. 64; Cal. Code Civ. Proc. §§ 484.020, 484.090.) Further, under Section 484.020, subsection (e), a description of the property to be attached under the writ of attachment and a statement that the plaintiff is informed and believes that such property is subject to attachment must also be provided. (Cal. Code Civ. Proc. § 484.020(e).)

**First**, an attachment may issue under Section 483.010, as (i) Plaintiffs' rescission claim is a claim upon which a writ of attachment may issue. (*See Trachsel v. Buchholz*, No. C-08-2248 RMW, 2009 WL 839117, at *3 (N.D. Cal. Mar. 30, 2009); (ii) the total amount of Plaintiffs' claim is fixed or readily ascertainable and over $500 as the amount being sought is $750,000; (iii) Plaintiffs' claim is not secured by any interest in real property; and (iv) Plaintiffs' claim as it pertains to Woods and Wu arises out of Woods and Wu's conduct of a trade, business, or profession. (Cal. Code Civ. Proc. § 483.010(c).)

**Second**, Plaintiffs have established the probable validity of the claim on which the attachment is based, as Plaintiffs have established a prima facie case for its rescission cause of action under Section 25503 of the Corporations Code based on Defendants' violation of Corporation Codes Section 25110, which makes it unlawful to offer or sell an unqualified security in the state unless the security is exempt. (Cal. Corp. Code § 25110.) In particular, not only were the securities offered and sold to Plaintiffs unregistered in violation of Sections 5(a) and 5(c) of the Securities Act, but the UC Seattle and UC Battery Park securities were unqualified because Defendants failed to: (i) obtain a permit from the Business Oversight Commissioner, authorizing Defendants to sell and issue a specified amount of securities in UC Seattle and UC Battery Park within a specified period of time, or (ii) give notice of information already furnished to the SEC under federal securities law. (Cal. Corp. Code §§ 25112, 25113; 15 U.S.C. §§ 77e(a), 77e(c).)

Additionally, Defendants' selling of UC Seattle and UC Battery Park securities was not exempt from the provisions of Section 25110. (Cal. Corp. Code § 25102.)

*Third*, the writ is not being sought for a purpose other than the recovery of Plaintiffs' $750,000 investment sum. (Cal. Code Civ. Proc. §§ 484.090(a)(3).)

*Fourth*, the amount to be secured, $750,000, is greater than zero. (Cal. Code Civ. Proc. § 484.090(a)(4).)

*Fifth*, the property Plaintiffs seek to attach is subject to attachment. As Form CV-4D demonstrates, Plaintiffs, as to Urban Commons, UC Seattle, and UC Battery Park are only seeking to attach corporate property subject to attachment pursuant to subdivision (a) of the Code of Civil Procedure Section 487.010. (Cal. Code Civ. Proc. § 484.020(e).) As Form CV-4D and the accompanying attachment demonstrate, Plaintiffs, as to Woods and Wu, are only seeking to attach individual property subject to attachment pursuant to Section 487.010(c). (See Cal. Code Civ. Proc. § 487.010(c).)

Plaintiffs also respectfully request the Court issue an order permitting expedited discovery pursuant to Federal Rules of Civil Procedure 30(b)(1), 33(b)(2), and 34(b)(2)(A). Plaintiffs seek expedited discovery narrowly tailored and pertaining to the assets of Urban Commons, UC Seattle, UC Battery Park, Woods, and Wu for the limited purpose of discovering Defendants' attachable assets, determining the full extent of Defendants' insolvency, and to prevent Defendants from liquidating any/or dissipating any assets and thereby denying this Court the ability to provide Plaintiffs with the final relief being sought.

For these reasons, and as set forth more fully below, Plaintiffs respectfully request the Court grant this Application and issue a RTAO and writ of attachment to secure damages in the amount of $750,000. Plaintiffs also respectfully request that the Court grant Plaintiffs' request for expedited discovery.

## II.   STATEMENT OF FACTS

### A.   The Urban Commons Enterprise

Woods and Wu are the co-founders and co-owners of Urban Commons, a real estate investment firm that manages a large portfolio of entities operating in the hospitality space. Woods and Wu solicited capital from investors, like Plaintiffs, by offering them securities in single purpose limited liability companies through which Defendants purchased hotel properties. (Rosen Decl., ¶ 7, Christensen Decl., ¶ 7.) Specific to Plaintiffs' claims are the single purpose limited liability companies UC Seattle and UC Battery Park. (*Id.*) More specifically and as will be explained in greater detail below, Defendants formed UC Seattle in order to purportedly purchase the Hilton Seattle and formed UC Battery Park in order to allegedly purchase the Wagner Hotel (formerly known as the Ritz-Carlton Battery Park). (Rosen Decl., ¶ 7, Christensen Decl., ¶¶ 7, 19.)

### B.   Plaintiffs' Investments In UC Seattle And UC Battery Park

#### 1.   UC Seattle

In or about January 2020, Defendants issued a private offering ("UC Seattle Offering") to investors such as Plaintiffs seeking to raise $40,000,000 in membership interest in UC Seattle. (Rosen Decl., ¶ 7, Christensen Decl., ¶ 8.)  UC Seattle is the single purpose limited liability company Defendants formed to purportedly purchase the Hilton Seattle. (*Id.*) In the time following the UC Seattle Offering, Plaintiffs had telephonic discussions with Defendants during which Defendants made a multitude of representations, including but not limited to the following: (i) Defendants represented to Plaintiffs that, after UC Seattle acquired the Hilton Seattle, the holding period would be about 3-4 months, at which point UC Seattle would sell the Hilton Seattle to EHT as had been the case with the multiple other hotel properties owned by Urban Commons, (ii) Plaintiffs would receive a 30% return on their investment, (iii) investing in UC Seattle was a "great deal", and (iv) Plaintiffs would be "great additions" to the "family." (Rosen Decl., ¶¶ 10-11, Christensen Decl., ¶¶ 10-11.) Based on these and other representations, Plaintiffs both participated in the UC Seattle Offering wherein each Plaintiff invested

1    $250,000 in UC Seattle. (Rosen Decl., ¶ 12, **Exh. C**., Christensen Decl., ¶ 12.)

2           Notably, at no point in time during the UC Seattle Offering and/or the UC Battery

3    Park Offering discussed below did Defendants disclose the financially volatile state of

4    EHT which meant EHT could not purchase their interests in the LLCs with a 30% return

5    within 3 to 4 months. Specifically, never did Defendants disclose that: (i) EHT had

6    defaulted on its $340,000,000 facility loan with Bank of America, (ii) trading of the

7    EAGLEHT units had been suspended on the Singapore Exchange, and (iii) EHT was

8    under investigation by the Monetary Authority of Singapore (MAS) and the Singapore

9    Exchange for suspected breaches of disclosure requirements and breaches of regulations

10   and listing rules. (Rosen Decl., ¶ 18, Christensen Decl., ¶ 17.) Significantly, had Plaintiffs

11   been made aware of any of these material misrepresentations, Plaintiffs would not have

12   invested in Defendants' securities offerings. (Rosen Decl., ¶ 19, Christensen Decl., ¶ 18.)

13          **2.   UC Battery**

14          In or about February 2020, Defendants issued a private offering ("UC Battery Park

15   Offering") to investors including Plaintiffs seeking to raise $70,000,000 in membership

16   interest in UC Battery Park. (Christensen Decl., ¶ 19.) UC Battery Park is the single

17   purpose limited liability company Defendants formed and through which they were

18   supposedly going to purchase the Wagner Hotel. (*Id*.)

19          Dr. Christensen is the only plaintiff that invested in UC Battery Park. Prior to his

20   $250,000 investment in UC Battery Park, Dr. Christensen had a telephonic call with

21   defendant Brian Egnatz.[1] During the telephonic call, Egnatz represented to Dr.

22   Christensen, among other things, that investing in UC Battery Park would yield a 30%

23   return on investment and that the sale of the Wagner Hotel to EHT would be completed by

24   the fourth quarter of 2020. (Christensen Decl., ¶ 21.) Based on these and other material

25   misrepresentations, Dr. Christensen participated in the UC Battery Park Offering by

26   investing $250,000 in UC Battery Park. (Christensen Decl., ¶ 23.) Remarkably, despite

27   ───────────────
[1] Plaintiffs are informed and believe therefore allege that Egnatz acted as a compensated unregistered sales agent on
28   behalf of defendant Urban Commons to market, offer, and sell membership interests in UC Seattle and UC Battery
     Park to investors such as Plaintiffs.

1  being told by Defendants that his $250,000 investment would be added to the rest of the
2  funds raised by UC Battery Park to purchase the Wagner Hotel, Dr. Christensen recently
3  learned that at the time he made his $250,000 investment, Defendants had already
4  completed the purchase of The Wagner Hotel. (Christensen Decl., ¶ 30.)

5  ## III.  <u>LEGAL STANDARD</u>

6      Federal Rule of Civil Procedure 64 grants this Court the power to fashion interim
7  relief using the procedural rules available to courts in the State of California. (*See* Fed. R.
8  Civ. P. 64.) Federal Rule of Civil Procedure 64 provides, in relevant part: "At the
9  commencement of and during the course of an action, all remedies providing for seizure
10  of person or property for the purpose of securing satisfaction of the judgment ultimately to
11  be entered in the action are available under the circumstances and in the manner provided
12  by the law of the state in which the district court is held, existing at the time the remedy is
13  sought[.]" (*Id.*) The effect of Rule 64 is "to incorporate state law to determine the
14  availability of prejudgment remedies for seizure of property to secure satisfaction of
15  judgment ultimately entered." (*Everflow Tech. Corp. v. Millennium Elect., Inc.,* Civ. A.
16  No. 07-5795, 2009 WL 2581273, at *1 (N.D. Cal. Aug. 19, 2009). *See also Hamilton*
17  *Beach Brands, Inc. v. Metric and Inch Tools, Inc.,* 614 F. Supp. 2d 1056, 1061 (C.D. Cal.
18  2009).)

19      California Code of Civil Procedure section 481.010, et seq., specifies the
20  procedures and grounds for granting prejudgment writs of attachment. (*Everflow*, 2009
21  WL 2581273, at *1.) A writ of attachment is proper in an action for a claim seeking
22  money damages, based on an express or implied contract, in which said claim is for a
23  fixed or readily ascertainable amount not less than $500, exclusive of costs, interest, and
24  attorneys' fees. (*Id.*, citing Cal. Code Civ. Proc. § 483.010(a)). *See also Goldstein v. Barak*
25  *Const.*, (2008) 164 Cal. App. 4th 845, 852.) Further, the claim may not be secured, and
26  must be a commercial claim. (*Id.,* citing Cal. Code Civ. Proc. § 483.010(b) and (c));
27  *Goldstein*, 164 Cal. App. 4th at 852.)

28      To obtain a writ of attachment, the moving party must establish that: (1) the claim

1    upon which the attachment is based is one upon which attachment may be issued; (2) the

2    plaintiff has established the "probable validity" of the claim upon which the attachment is

3    based; (3) the attachment is not sought for a purpose other than the recovery on the claim

4    upon which attachment is based; and (4) the amount to be secured by the attachment is

5    greater than zero. (*Everflow*, 2009 WL 2581273 at *2 citing Cal. Code Civ. Proc. §

6    484.090(a)); *Hamilton Beach*, 614 F. Supp. 2d at 1061.) In addition to the four factors

7    above, the description of the property to be attached must be "reasonably adequate to

8    permit the defendant to identify the property sought to be attached." (*Gen. Elec. Capital*

9    *Corp. v. Rhino Bus. Sys., Inc*., No. 216CV00029KJMCMK, 2016 WL 2743557, at *3

10   (E.D. Cal. May 11, 2016) citing to Cal. Code Civ. Proc. § 484.020(e).)

11        As demonstrated below, Plaintiffs have satisfied their burden of demonstrating all

12   of the requisite elements. (*Everflow*, 2009 WL 2581273 at *2 [movant bears the burden];

13   *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co*., 112 F. Supp. 2d 1178, 1181 (C.D. Cal.

14    2000).)

15   **IV.    LEGAL ARGUMENTS**

16        **A.    The Court Should Issue A Writ of Attachment**

17        Plaintiffs have satisfied all four requirements for issuance of a Right to Attach

18   Order and writ of attachment under Section 484.090(a).

19             **1.    Plaintiffs' Claim Is One Upon Which An Attachment May Issue**

20        Plaintiffs' Writ of Attachment is based on violations of California Corporations

21   Code Section 25503, a claim upon which an attachment may issue. (*Trachsel v. Buchholz*,

22   No. C-08-2248 RMW, 2009 WL 839117, at *3 (N.D. Cal. Mar. 30, 2009) ["Accordingly,

23   it would appear that a writ of attachment may be based upon a claim of rescission under

24   Cal. Corp. Code § 25503 as the sum of money to be returned to plaintiffs should they

25   prevail is ascertainable based upon the amount invested and the 'interest at the legal rate,

26   less the amount of any income received therefrom.'"]; *Bennett v. Superior Court in and*

27   *for Los Angeles County*, (1933) 218 Cal. 153, 161 ["[T]he rule is established upon well-

28   considered authority that, if upon examination of the complaint the gravamen of the action

forces the conclusion that it is an action for the recovery of a specific sum of money upon a contract, express or implied, an attachment will issue regardless of the fact that the exercise of equitable powers of the court are also incidentally involved."].)

Therefore, Plaintiffs' claim based upon violations of Section 25503 is one upon which an attachment may issue.

**2.  Plaintiffs' Claim Is For A Fixed Or Readily Ascertainable Sum Over $500**

Here, the sum owed to Plaintiffs under their rescission claim is ascertainable based upon the amount each invested in UC Seattle and UC Battery Park respectively and the "interest at the legal rate, less the amount of any income received therefrom." (*Trachsel v. Buchholz*, No. C-08-02248 RMW, 2009 WL 839117, at *4 (N.D. Cal. Mar. 30, 2009); Cal. Corp. Code § 25503.) Specifically, Plaintiffs seek to recover a total of $750,000, which represents Dr. Rosen's $250,000 investment in UC Seattle and Dr. Christensen's $250,000 investments in UC Seattle and UC Battery Park. (Christensen Decl., ¶ 3, Rosen Decl., ¶ 3.) Further, the sum of Plaintiffs' claim is readily ascertainable by reference to the subscription agreements Dr. Christensen and Dr. Rosen executed as part of their purchase of a membership interest in UC Seattle and UC Battery Park respectively. (Christensen Decl., ¶¶ 3, 13, 23, **Exhs. I, N**; Rosen Decl., ¶¶ 3, 12, **Exh. C**.)

**3.  Plaintiffs' Claim Against Woods and Wu Arises Out Of Their Conduct Of a Trade, Business Or Profession**

Commercial claims against individuals must arise out of the defendant's conduct of a trade, business or profession. (Cal. Code Civ. Proc. § 483.010(c); *Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson,* (1987) 197 Cal.App.3d 1, 4.) What constitutes a "trade, business or profession" has yet to be definitively construed. Generally, it means an activity carried on "for the purpose of livelihood or profit on a continuing basis." (*Nakasone v. Randall*, (1982) 129 Cal.App.3d 757; *Douglas v. Smith*, No. SACV 09-1365-DOCMLGX, 2010 WL 1734903, at *2 (C.D. Cal. Apr. 28, 2010).) This inquiry concerns whether the activity that generated the debt is of the kind "which occupies the

time, attention and effort of the [defendant] for the purpose of livelihood or profit on a continuing basis." (*See Advance Transformer Co. v. Superior Court*, (1974) 44 Cal. App. 3d 127, 144.)

Here, Plaintiffs' claims against Woods and Wu arise from their "trade, business, or profession." As explained above, Woods and Wu are the co-founders and co-owners of Urban Commons, a real estate investment firm that manages a large portfolio of entities operating in the hospitality space. Marketing, soliciting, and selling securities in the hospitality space was part of Woods and Wu's business activity that substantially occupied their time and efforts and constituted a continuing basis for promoting their own profit. Specifically, by and through Urban Commons, Woods and Wu would create single purpose limited liability companies through which they would purchase hotel properties. Woods and Wu by and through Urban Commons would then turn around and offer investors such as Plaintiffs a membership interest in the single purpose limited liability company with the promise of great returns on investments. Woods and Wu by and through Urban Commons would repeat this same process over and over, each time with a new/different single purpose limited liability company and a new/different hotel property. (Christensen Decl., ¶ 22, **Exh. M**.)

As officers and directors of Urban Commons and its subsidiaries, Woods and Wu managed the day-to-day business of Urban Commons, which included identifying the hotel property to be purchased, the formation of the single purpose limited liability company through which the identified hotel property would be purchased and the marketing, soliciting, and selling of a membership interested in the newly formed LLC.

Defendants carried out this fraudulent scheme to a tee twice against Plaintiffs: first in marketing, soliciting, and selling Plaintiffs a membership interest in UC Seattle and a second in inducing Dr. Christensen to purchase a membership interest in UC Battery Park.

Therefore, there is no denying that Plaintiffs' claims against Woods and Wu arise from their trade, business or profession.

### 4.  Plaintiffs' Claim Is Not Secured By Real Property

An attachment may not be issued on a claim which is secured by an interest in real property. (Cal. Code Civ. Proc. § 483.010(b).) Plaintiffs' securities claim arises out of the sale of unregistered, unqualified and non-exempt securities by Defendants to Plaintiffs in violation of Section 25110 of the California Corporations Code. Accordingly, Plaintiffs' claim is unsecured, by real property or otherwise. (Christensen Decl., ¶ 5, Rosen Decl., ¶ 4.)

Thus, based on the above, Plaintiffs have established that their claim is one on which an attachment may be issued.

### B.  Plaintiffs Have Established The Probable Validity of its Rescission Claim

Probable validity does not require that the applicant prove it will actually win its claim; rather, "[a] claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (Cal. Code Civ. Proc. § 481.090.) That is, "the plaintiff must at least establish a prima facie case" and "the court must then consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." (*See* Cal. Law Revision Comm. Com. to Cal. Code Civ. Proc. § 481.190.)

Here, Plaintiffs' rescission claim is based on violations of Section 25110 of the California Corporations Code, which makes it unlawful to offer or sell an unqualified security in the state unless the security is exempt. (Cal. Corp. Code § 25110.) As is set forth below, Plaintiffs have met their standard of showing the probable validity of their claim.

### 1.  Defendants Offered And Sold Plaintiffs A Security

Under Section 25019 of the California Corporations Code, the definition of "security" includes a subscription and/or investment contract. (Cal. Corp. Code § 25019; *Trachsel v. Buchholz*, No. C-08-02248 RMW, 2009 WL 839117, at *5 (N.D. Cal. Mar. 30, 2009).) For the purpose of both the federal and the California securities law, an investment contract means a contract or transaction whereby a person invests money in a

common enterprise with the expectation of deriving a profit solely from the efforts of a promoter or a third person. (*Securities & Exch. Com. v. Howey Co.* (1946) 328 U.S. 293, 298–299; *People v. Skelton* (1980) 109 Cal.App.3d 691, 713; *People v. Park* (1978) 87 Cal.App.3d 550, 563; *Oil Lease Service, Inc. v. Stephenson* (1958) 162 Cal.App.2d 100, 109.)

As the court explained in *Securities & Exch. Com'n v. Glenn W. Turner Enter., Inc.* (D.Or.1972) 348 F.Supp. 766, 774: "The most essential consistency in the cases which have considered the meaning of 'investment contract' is the emphasis on whether or not the investor has substantial power to affect the success of the enterprise. When his success requires professional or managerial skill on his part, and he has authority corresponding with his responsibility, his investment is not a security within the meaning of the securities act. When he is relatively uninformed and unskilled and then turns his money over to others, essentially depending upon their representations and their honesty and skill in managing it, the transaction is an investment contract." (*People v. Coster,* 151 Cal. App. 3d 1188, 1193–94 (Ct. App. 1984) quoting *Securities & Exch. Com'n v. Glenn W. Turner Enter., Inc.* (D.Or.1972) 348 F.Supp. 766, 774.)

Here, based on the broad definition of security under Section 25019, there is no doubt that Defendants' offering and selling of a membership interests in UC Seattle and UC Battery Park qualify as a security under California law. There is also no doubt that in investing in UC Seattle and UC Battery Park, Plaintiffs were depending upon Defendants' representations, honesty, and skills in investing in these securities. Additionally, treating the purchase of a membership interest in commercial real estate projects such as UC Seattle and UC Battery Park as a security is consistent with the intent of Section 25019, which "is designed to embrace speculative schemes to attract risk capital, no matter how ingeniously designed, and the courts will look through form to substance to achieve this end." (*Sarmento v. Arbax Packing Co.*, (1964) 231 Cal.App.2d 421, 424 [discussing prior statute]; *see also Silver Hills Country Club v. Sobieski*, (1961) 55 Cal.2d 811, 814 [the purpose of the law is "to protect the public against spurious schemes, however ingeniously

1  devised, to attract risk capital."]; *Trachsel v. Buchholz*, No. C-08-02248 RMW, 2009 WL

2  839117, at *5 (N.D. Cal. Mar. 30, 2009); *See, e.g., Sobieski*, 55 Cal.2d at 814.)

### 2. The Security Defendants Sold Plaintiffs Were Without Qualification Or Exemption

Every security that is offered or sold in California must comply with the Corporate Securities Law. (Cal. Corp. Code § 25000 *et seq.*) .) California Corporations Code Section 25110 makes it unlawful to offer or sell an unqualified security in the state "unless such security or transaction is exempted or not subject to qualification under Chapter 1." (Cal. Corp. Code § 25110; *Trachsel v. Buchholz*, No. C-08-02248 RMW, 2009 WL 839117, at *5 (N.D. Cal. Mar. 30, 2009).) A security is "qualified" only if the issuer: (i) obtains a permit from the Business Oversight Commissioner, authorizing the issuer to sell and issue a specified amount of securities within a specified period of time or (ii) gives notice of information already furnished to the SEC under federal securities laws. (Cal. Corp. Code §§ 25112, 25113.)

Here, Defendants met neither of these requirements for the offering and selling of securities in UC Seattle and UC Battery Park to Plaintiffs. Absent compliance, Defendants violated the securities laws unless the securities satisfy an exemption, which they do not.

Accordingly, as the sale of membership interests in UC Seattle and UC Battery qualify as the sale of a security under California law and because securities offered and sold to Plaintiffs by Defendants were not exempt from qualification, Plaintiffs have established the probable validity of their claim.

### C. The Attachment Is Sought Only To Recover On Plaintiffs' Claim

Plaintiffs seek a right to attach order and an order issuing a writ of prejudgment attachment solely to secure damages related to their rescission claim. (Christensen Decl., ¶ 4, Rosen Decl., ¶ 4.) Specifically, Plaintiffs seek to recover a total of $750,000, which represents the total sum of their investments. (Christensen Decl., ¶ 3, Rosen Decl., ¶ 3.)

### D. The Amount Sought Is Greater Than Zero

Finally, the attachment statute requires the amount to be secured by the attachment

- 12 -

be "greater than zero" (Cal. Code Civ. Proc. § 484.090(a)(4).) As stated above, Plaintiffs seek an attachment against Defendants in the amount of $750,000, which is indisputably greater than zero. (Christensen Decl., ¶ 6, Rosen Decl., ¶ 6.)

### E. **Plaintiffs' Description of the Attachable Property Is Reasonably Adequate.**

Plaintiffs only seek to have the writ issued as to Defendants' attachable property. With respect to Urban Commons, UC Seattle, and UC Battery Park, Plaintiffs seek to attach the following, without limitation: interests in real property, accounts receivable, chattel, general intangibles, equipment, farm products, inventory, final money judgments, money located within business premises or in bank accounts, instruments, securities in any business entity, minerals or the like, and vehicles. Because Urban Commons, UC Seattle, and UC Battery Park are business entities, they may not claim any personal exemptions, all its property described is subject to attachment. (*See* Cal. Code Civ. Proc. § 487.010; Christensen Decl., ¶ 5, Rosen Decl., ¶ 5.) With respect to Woods and Wu, Plaintiffs seek to attach all property of each defendant that is subject to attachment under Section 487.010(c) and as fully set forth in form CV-4D. Furthermore, Plaintiffs are informed and believe that the property described in form CV-4D as to Woods and Wu is attachable. (Christensen Decl., ¶ 5, Rosen Decl., ¶ 5.)

Additionally, the Court may issue an attachment order against Defendants' property even if their specific property cannot be readily located or identified at the time the application is filed; rather, broad descriptions of the defendant's property for purposes of the attachment application may be utilized. (*See Bank of America v. Salinas Nissan, Inc.*, (1989) 207 Cal. App. 3d 260, 268  ["We do not understand it to prohibit a plaintiff from targeting for attachment everything an individual defendant owns."]; *see also Fremont Bank v. Signorelli, No.* 18-CV-04808-HSG, 2018 WL 6609565, at *3 (N.D. Cal. Dec. 17, 2018) ["[U]nder California law a plaintiff can simply list the categories of attachable assets as provided in section 487.010 in a motion for right to attach order, even as to natural-person defendants."].) (emphasis added). In *Salinas*, the court approved a writ application describing the property sought to be attached in general, comprehensive

- 13 -

categories. Salinas' holding has been repeatedly upheld in this jurisdiction. (*See*, *e.g.*, *Maaco Franchising, LLC v. 5296, LLC,* No. EDCV162218GWSPX, 2017 WL 10543655, at *10 (C.D. Cal. Apr. 24, 2017) (applying California attachment law); *Douglas v. Smith*, No. SACV 09-1365-DOCMLGX, 2010 WL 1734903, at *5 (C.D. Cal. Apr. 28, 2010) (same).) In addition, as is explained in greater detail below, Plaintiffs' request for expedited discovery is intended to aid Plaintiffs' in their efforts to identify and locate all attachable property belonging to Urban Commons, UC Seattle, UC Battery Park, Woods, and Wu.

**F.** **Plaintiffs' Request For Expedited Discovery Is Necessary To Determine The Disposition And Location Of Defendants' Assets And To Trace Defendants' Ill-Gotten Gains**

California law expressly authorizes the use of discovery in aid of attachment. Where a right to attach order has been issued by the court, a plaintiff may discover,

through any mean provided for by, and subject to the prohibitions included in, Title 4, commencing with section 2016.010 of Part 4 [governing discovery in civil actions generally], the identity and location of property in which the defendant has an interest. (Cal. Code Civ. Proc. § 485.230.) It follows that under Rule 64 of the Federal Rules of Civil Procedure, Plaintiffs may conduct discovery in aid of attachment if the Court issues the requested right to attach order. (*See Rose v. Abraham*, 2008 WL 3540542, *3-4 (E.D. Cal. 2008) [granting motion for expedited discovery]; *see also Hyosung (Am.) Inc v. Tranax Techs. Inc,* No. C 10-0793 VRW, 2010 WL 11587065, at *3 (N.D. Cal. Mar. 31, 2010).)

To that end, Plaintiffs seek expedited discovery to identify Defendants' assets subject to attachment, prevent Defendants from attempting to hide and/or conceal any attachable assets, and trace any ill-gotten gains. To facilitate these efforts, Plaintiffs seek an order shortening the time Defendants have to respond to the special interrogatories attached as **Exhibits V-Z** to the Appendix of Exhibits. Specifically, Plaintiffs seek an order shortening Defendants' response time from 30-days after service as allowed by

Federal Rule 33 to 7 days after the Court grants Plaintiffs' Application. (*See* Fed. R. Civ. P. 33.) Plaintiffs also request an order that Defendants appear for deposition within 5 days of issuance of the Court's order, provide testimony on topics and produce documents in response to document requests narrowly tailored and pertaining to their assets as set forth in the notices of deposition attached as **Exhibits Q-U** to the Appendix of Exhibits.

## V.   CONCLUSION

Based on the foregoing, and for such additional reasons as may be advanced at or prior to the hearing, Plaintiffs respectfully ask the Court to issue the right to attach order and writ of attachment. Plaintiffs also request that the Court grant Plaintiffs' request for expedited discovery.

DATED:  April 16, 2021

GARCIA RAINEY BLANK & BOWERBANK LLP

By _____
NORMA V. GARCIA
JEFFREY M. BLANK
HUGO A. LOPEZ
Attorneys for Plaintiffs
Clifford A. Rosen, MD and Ronald Christensen, MD

- 15 -