GARCIA RAINEY BLANK & BOWERBANK LLP
A LIMITED LIABILITY PARTNERSHIP
NORMA V. GARCIA, Cal. Bar No. 223512
ngarciaguillen@garciarainey.com
JEFFREY M. BLANK, Cal. Bar No. 217522
jblank@garciarainey.com
HUGO A. LOPEZ, Cal. Bar No. 315846
hlopez@garciarainey.com
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
Telephone:   (714) 382-7000
Facsimile:    (714) 784-0031

Attorneys for Plaintiffs
Clifford A. Rosen, MD and Ronald A. Christensen, MD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD A. ROSEN, an individual; RONALD A. CHRISTENSEN, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>URBAN COMMONS, LLC, a Delaware Limited Liability Company; URBAN COMMONS 6TH AVE SEATTLE, LLC, a Delaware Limited Liability Company; URBAN COMMONS BATTERY PARK, LLC, a Delaware Limited Liability Company; CHICAGO ANALYTIC TRADING COMPANY, LLC, d/b/a LITTLERIVER CAPITAL, LLC, a Delaware Limited Liability Company; DIGITAL CAPITAL MARKETS, LLC, a Maryland Limited Liability Company; TAYLOR WOODS, an individual; HOWARD WU, an individual; C. BRIAN EGNATZ, an individual; and DOES 1 through 10, inclusive<br><br>Defendants | **Case No.:** 8:20-cv-01973-JLS-DFM<br><br>**DECLARATION OF DR. CLIFFORD A. ROSEN IN SUPPORT OF PLAINTIFFS' APPLICATION FOR RIGHT TO ATTACH ORDER, ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT, AND REQUEST FOR AN ORDER PERMITTING EXPEDITED DISCOVERY**<br><br>Date:         May 14, 2021<br>Courtroom:   6B, 6th Floor<br>Judge:        Hon. Douglas F. McCormick |

- 1 -

## DECLARATION OF DR. CLIFFORD A. ROSEN

1.      I am an individual residing in Lakeshore, Ontario, Canada and named plaintiff in this action. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2.      This declaration is submitted in support of Plaintiffs' Application for Right to Attach Order, Order for Issuance of Writ of Attachment, And Request For An Ordering Permitting Expedited Discovery.

3.      Through this Application, I along with my co-plaintiff Ronald A. Christensen ("Dr. Christensen") seek to attach a sum equivalent to $750,000 against defendants Urban Commons, LLC ("Urban Commons"), Urban Commons 6th Ave Seattle, LLC ("UC Seattle"), Urban Commons Battery Park, LLC ("UC Battery Park"), Taylor Woods ("Woods"), and Howard Wu ("Wu"). This sum consists of my $250,000 investment in the purchase of a membership interest in Urban Commons 6th Ave Seattle, LLC ("UC Seattle") as well as Dr. Christensen's $250,000 investment in the purchase of a membership interest in UC Seattle and $250,000 investment in the purchase of a membership interest in Urban Commons Battery Park, LLC ("UC Battery Park").

4.      Our rescission claim against Defendants arises out of Defendants unlawful sale of unregistered, unqualified, and non-exempt securities (UC Seattle and UC Battery Park) in California. I am not seeking the attachment for any purpose other than to recover my $250,000 investment in UC Seattle related to my rescission claim. As Form CV-4D filed concurrently with the Application demonstrates, Plaintiffs, as to Urban Commons, UC Seattle, and UC Battery Park are only seeking to attach corporate property subject to attachment pursuant to subdivision (a) of the Code of Civil Procedure Section 487.010. As Form CV-4D and the accompanying attachment demonstrate, Plaintiffs, as to Woods and Wu, are only seeking to attach individual property subject to attachment pursuant to Section 487.010(c). (See Cal. Code Civ. Proc. § 487.010(c).)

5.      Additionally, the $250,000 investment amount owed to me is unsecured, by

1  real property or otherwise and to the best of my knowledge, the property I am seeking to

2  attach is not exempt from attachment.

3        6.     In addition, as stated above, the amount to be secured by the attachment is

4  greater than zero as we are seeking to attach a sum equivalent to $750,000.00.

6                          **INVESTMENT IN UC SEATTLE**

7        7.     In or about January 2020, defendants Urban Commons, Woods, and Wu

8  issued a private offering ("UC Seattle Offering") to investors, including myself and Dr.

9  Christensen seeking to raise Forty Million Dollars ($40,000,000) in membership interest

10  in UC Seattle, which is a single purpose limited liability company formed by Woods and

11  Wu that was to be used to purchase the Hilton Seattle Hotel, located at 1301 6th Avenue,

12  Seattle, Washington ("Hilton Seattle").

13        8.     As part of the UC Seattle Offering, on or about January 6, 2020, I received a

14  written correspondence from Woods on behalf of Urban Commons discussing Urban

15  Commons' "phenomenal track record" in its "value-add hospitality acquisitions and

16  dispositions." The correspondence also discussed Urban Commons' sponsorship of Eagle

17  Hospitality Trust ("EHT"), which is a U.S. hospitality-focused public REIT in Singapore.

18  The correspondence also discussed an "exciting investment opportunity" in the Hilton

19  Seattle and identified the following as key investment highlights: (i) up to $25MM of

20  equity available for investment, (ii) ownership will be based on $40MM of total equity in

21  the deal, (iii) expected duration of the investment 3-4 months, and (iv) cash on cash return

22  to investors targeted at 37%+ with targeted IRR at 100%+. Attached to the Appendix of

23  Exhibits as **Exhibit A** is a true and correct copy of the Woods' correspondence.

24        9.     As part of the UC Seattle Offering, I also received a document titled "Hilton

25  Seattle Hotel Investment Opportunity", which outlined in greater detail Urban Commons'

26  credentials and expertise in hospitality acquisitions as well as provided additional

27  information about the Hilton Seattle Hotel. Notably, the document stated that Urban

28  Commons had reached an agreement to purchase the Hilton Seattle for approximately

97.5MM and that upon sale of the Hilton Seattle, Urban Commons expected to achieve a 7.0% exit capitalization rate. Attached to the Appendix of Exhibits as **Exhibit B** is a true and correct copy of the document titled "Hilton Seattle Hotel Investment Opportunity."

10.     Prior to committing to investing in UC Seattle and in hopes of gaining a better understanding about Urban Commons, UC Seattle and the Hilton Seattle, I had several conversations with Woods and Engatz. In particular, on or about January 15, 2020, I along with Dr. Christensen had a telephone call with Woods and defendant Brian Egnatz ("Egnatz") about investing in UC Seattle. During the telephone call, Woods did most of the talking. Woods explained to us what Urban Commons was and did. Woods also explained to us the details of the purchase of the Hilton Seattle and discussed with us investing in UC Seattle.

11.     During the call, Woods explained that after the Hilton Seattle was purchased by UC Seattle, UC Seattle would hold the hotel property for about 3-4 months. **Thereafter, UC Seattle would sell the Hilton Seattle to EHT. During this call, Woods further stated that after fees and closing costs, there would be a 30% return on our investment.** Woods even represented that investing in UC Seattle was a "great deal" and that we would be "great additions" to the "family."

12.     Based on the representations contained in the offering materials for UC Seattle mentioned above as well as the numerous telephonic conversations with Woods and Egnatz and reliance on same, on or about January 29, 2020, I executed a Subscription Agreement ("UC Seattle Subscription Agreement") whereby I invested $250,000.00 in purchasing a membership interest in UC Seattle. I issued payment by wiring $250,000 to UC Seattle's Bank of America, NA bank account. My investment resulted in an ownership percentage of 0.625% in UC Seattle. Attached to the Appendix of Exhibits as **Exhibit C** is a true and correct copy of the UC Seattle Subscription Agreement.

13.     Notably, the UC Seattle Subscription Agreement executed between me and Urban Commons included the following representations:

- The Company ("UC Seattle") will not use or apply my $250,000 investment

until UC Seattle has raised the necessary funds from the UC Seattle Offering;

- The funds raised from the UC Seattle Offering would be used to invest in an entity which would acquire, own, operate, and eventually sell the Hilton Seattle, located at 1301 6th Avenue, Seattle, Washington (the "Property");

- The purchase price would be deposited into an interest-bearing secure bank account;

- In the event the subscription was terminated, all funds raised by the Company would be returned to the to the applicable investors, together with any interest remaining on such funds following the payment of all costs and expenses; and

- The Company would obtain acquisition loans in an approximate aggregate amount of approximately Sixty Million Dollars ($60,000,000.00) in order to acquire and refurbish the Property.

14.    To date, Defendants have not provided any information or proof, despite repeated requests, that Defendants completed their offering for UC Seattle nor have Defendants provided any information or proof that they raised the $40,000,000 from the offering of membership interests in UC Seattle. Significantly, during the marketing and solicitation of investments in the membership interest of UC Seattle by Defendants, Woods represented to me that the UC Seattle Offering would be completed by March 2020 and that as of January 6, 2020, Defendants had already raised $25,000,000 from their offering of membership interests in UC Seattle and that Woods himself had personally invested $5,000,000 to $10,000,000. Based on all of this, it is my belief that Defendants never completed the UC Seattle Offering.

15.    To date, Defendants have not provided any information or proof, despite repeated requests, that Defendants obtained a financing commitment for the acquisition loans in an approximate aggregate amount of approximately $60,000,000.00 in order to acquire the Hilton Seattle nor have Defendants provided any information or proof that Defendants acquired and/or refurbished the Hilton Seattle. Based on all of this, it is my belief that Defendants never obtained the $60,000,000.00 financial commitment to acquire

1   and/or refurbish the Hilton Seattle.

2        16.    To date, Defendants have not provided any information or proof, despite

3   repeated requests, that my $250,000 investment is being held in a segregated interest-

4   bearing escrow account in accordance with and as required by the UC Seattle Subscription

5   Agreement. In fact, on multiple occasions I have requested from Defendants written proof

6   that my $250,000 investment is in an interest-bearing escrow account, however,

7   Defendants have failed and/or refused to provide any such proof. Thus, based on all of

8   this, I do not believe that my $250,000 in UC Seattle is being held in an interest-bearing

9   escrow account.

10        17.    In addition to executing a Subscription Agreement, I also executed an

11   Operating Agreement for UC Seattle with Urban Commons which was signed by Woods

12   and Wu on behalf of Urban Commons as managers and members of same. Attached to the

13   Appendix of Exhibits as **Exhibit D** is a true and correct copy of the Operating Agreement.

14        18.    **Importantly, Woods omitted the following critical and material facts**

15   **from these conversations which would have impacted my decision to invest: (i) that**

16   **the EHT had defaulted on its $340,000,000 facility loan with Bank of America only**

17   **weeks before our call with Woods, (ii) that trading of the EAGLEHT units had been**

18   **suspended on the Singapore Exchange, (iii) that there would be exposure to**

19   **Singapore market fluctuations and risk and (iv) that the EHT was under**

20   **investigation by the Monetary Authority of Singapore (MAS) and the Singapore**

21   **Exchange for suspected breaches of disclosure requirements and breaches of**

22   **regulations and listing rules. Significantly, had I been made aware of any of these**

23   **material omissions by Woods or any of the Defendants at any point in the UC Seattle**

24   **Offering, I would not have invested $250,000 in UC Seattle. After all, how could the**

25   **EHT, which was financially insolvent, acquire the Seattle Hilton from UC Seattle 3-4**

26   **months after the hotel property was purchased if it lacked the financial means to do**

27   **so?**

28        19.    Likewise, but for the representations: (i) in Woods' January 6, 2020

DECLARATION OF DR. CLIFFORD A. ROSEN IN SUPPORT OF PLAINTIFFS' APPLICATION FOR WRIT
OF ATTACHMENT

1    correspondence, (ii) the "Hilton Seattle Investment Opportunity", (iii) made by Woods

2    and Egnatz during my conversations with them, and (iv) included in the UC Seattle

3    Subscription Agreement, I would not have invested in UC Seattle.

4

5    **Inquiries Into The Status Of My Investments And Defendants' Evasiveness And**

6    **Lack Of Cooperation Regarding Same**

7    20.    By May 2020, with UC Seattle still not having completed its offering, not

8    having raised the necessary funds of $40,000,000 from its offering in membership

9    interests, and not having obtained the $60,000,000 financing commitment in order to

10    acquire and refurbish the Hilton Seattle, I sought to rescind the purchase of my

11    membership interest in UC Seattle and demanded remittance of my $250,000 investment

12    in UC Seattle. More specifically, on or about May 17, 2020, my attorney Mark R. Riley,

13    provided Defendants written notice of my rescission of membership interest in UC Seattle

14    and demanded that Defendants remit $750,000 which represented my $250,000

15    investment in UC Seattle and Dr. Christensen's $250,000 investments each in UC Seattle

16    and UC Battery Park. The notice gave Defendants until Friday, May 22, 2020 to

17    reimburse the entire sum owed. Notably, the notice also outlined the myriad of

18    misrepresentations and omissions of material facts concerning Defendants, including, but

19    not limited to EHT's default on a $341 million facility loan. Attached to the Appendix of

20    Exhibits as **Exhibit E** is a true and correct copy of the May 17, 2020 Notice.

21    21.    Unfortunately, May 22, 2020 came and went and Defendants failed to

22    reimburse any of our investment sum. Accordingly, on or about June 6, 2020, Mr. Riley

23    on my behalf and on behalf of Dr. Christensen sent then counsel for Defendants Mark S.

24    Adams a Demand for Inspection of Books and Records for UC Seattle. Attached to the

25    Appendix of Exhibits as **Exhibit F** is a true and correct copy of the Demand for

26    Inspection.

27    22.    On or about June 19, 2020, Defendants produced 282 bates stamped

28    documents made up of 11,966 pages. Shockingly, the documents produced by Defendants

DECLARATION OF DR. CLIFFORD A. ROSEN IN SUPPORT OF PLAINTIFFS' APPLICATION FOR WRIT
OF ATTACHMENT

1   were not responsive to our demands. Thus, on June 21, 2020, Mr. Riley sent written
2   correspondence for then counsel for Defendants Mark S. Adams outlining the lack of
3   compliance and deficiencies in Defendants' document production. Importantly, the
4   written correspondence outlined how not a single page was produced evidencing that: (i)
5   neither I nor Dr. Christensen were members in UC Seattle, (ii) the 2020 offering of
6   membership interests occurred, (iii) my investment funds were deposited into an interest-
7   bearing secure bank account; (iv) my initial membership interest was not reflected in the
8   Operating Agreement, (v) UC Seattle completed its offering and raised the necessary $40
9   million from its offering of membership interests, and (vi) UC Seattle obtained the $60
10  million financing commitment. Attached to the Appendix of Exhibits as **Exhibit G** is a
11  true and correct copy of the June 21, 2020 written correspondence.

12      23.     Subsequently, on or about June 30, 2020, Mr. Riley also sent written notice
13  to defendant Egnatz once again rescinding my membership interest in UC Seattle and
14  demanding remittance of my $750,000, which consisted of my $250,000 investment in
15  UC Seattle and Dr. Christensen's $250,000 investment each in UC Seattle and UC Battery
16  Park and Mr. Rosen's $250,000 investment in UC Seattle. The Notice gave Egnatz until
17  Friday, July 20, 2020 to remit payment of the total sum owed. However, Egnatz did not
18  remit payment on July 20, 2020 or any time thereafter. Attached to the Appendix of
19  Exhibits as **Exhibit H** is a true and correct copy of the Notice of Rescission to Egnatz.

21      I declare under the penalty of perjury under the laws of the United States that the
22  foregoing is true and correct.

24      Executed on April __16__, 2021 at Lakeshore, Canada.

27  Clifford A. Rosen

DECLARATION OF DR. CLIFFORD A. ROSEN IN SUPPORT OF PLAINTIFFS' APPLICATION FOR WRIT
OF ATTACHMENT